Tagged Opinion



**ORDERED in the Southern District of Florida on August 06, 2009.**

Laurel M. Isicoff, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                        Case No. 08-17932-BKC-LMI

MARC BARRETT,                                 Chapter 7

      Debtor.

_____/

HARRY BRADFORD BARRETT                        Adv. Case No. 08-01844-BKC-LMI
RESIDUARY TRUST, DEAN BARRETT and
BRADFORD BARRETT,

      Plaintiffs,

v.

MARC BARRETT,

      Defendant.

_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

This matter came before the Court on May 6, 2009, on the Motion for Summary

Judgment (DE #12) filed by the Plaintiffs, the Response and Cross-Motion for Summary

Judgment (DE #27) filed by the Defendant, the Plaintiffs' Response to Defendant's Cross-

Motion (DE #29), and the Defendant's Reply (DE #32). For the reasons stated below the

Plaintiffs' Motion for Summary Judgment is GRANTED; the Defendant's Cross-Motion for Summary Judgment is DENIED.

## FACTS[1]

In 1973, Harry Bradford Barrett created a testamentary trust (the "Trust") for the benefit of his wife, Helen Barrett. The Trust provides that upon Mrs. Barrett's death, the Trust will terminate and the Barretts' three sons – Dean, Bradford, and Marc – will share equally in the remainder. The three sons were named as co-trustees of the Trust, along with Mrs. Barrett.

From 1980 to 1985, the Debtor, Marc Barrett ("Marc" or "Debtor"), took loans both directly from the Trust and indirectly from the Trust through Mrs. Barrett, who would take funds from the Trust and place them into her own account before turning the funds over to Marc. Those loans were memorialized with notes which the Trust alleged totaled over $600,000. [See The Trust Parties' Motion for Summary Judgment (DE #12), Exhibit A: "Verified Complaint for Removal of Trustee, Injunctive Relief and Restitution," Case No. 05-909-CP, ¶ 10].

On or about February 18, 1986, Marc filed for protection under chapter 7 of the Bankruptcy Code, by filing a petition for relief in the Bankruptcy Court for the District of Colorado (the "Colorado Bankruptcy"). Marc received a discharge in the Colorado Bankruptcy in August 1986 (the "1986 Discharge"). Around the time of the Colorado Bankruptcy Marc ceded any control over the Trust to his brother Bradford, who, for the next twenty years, managed the Trust assets.

By 2005 Marc was having financial problems again. He sought some assistance from the Trust, but his brother turned him down. Marc then sent a letter to the firm holding all the Trust's liquid assets, Charles Schwab & Co., and advised Schwab to "not honor or make any transfers or

---

[1] These facts are taken from the pleadings filed by the parties where there is no dispute, and otherwise from the findings of fact of the Probate Court (defined herein).

do anything without my permission." Because of Marc's letter, Schwab froze the account, jeopardizing payment of Mrs. Barrett's medication and of her housing at a nursing home facility.[2]

On October 10, 2005, co-trustees Dean and Bradford brought an action pursuant to Fla. Stat. §737.201(1)(a)[3] against Marc in state court (the "Probate Action"),[4] seeking removal of Marc as co-trustee on the grounds that Marc wasted Trust assets by borrowing funds and not repaying them and for improperly causing the Trust's liquid assets to be frozen, interfering with Mrs. Barrett's health and support. The complaint also sought restitution or declaration that funds borrowed by Marc from the Trust were an advancement of any amount which may be due to Marc upon the Trust's termination or distributions to be made to Marc upon the death of Mrs. Barrett.

The Probate Court granted Dean and Bradford temporary injunctive relief on April 20, 2006, removing Marc as co-trustee during the pendency of the Probate Action, finding, as a preliminary matter, that Marc had committed "financial mismanagement" and that his actions created a conflict of interest relating to his position as a co-trustee. [The Trust Parties' Motion for Summary Judgment (DE #12), Exhibit B: "Corrected Order Granting Plaintiffs' Motion for Temporary Injunction," Case No. 05-909-CP (the "TRO"), pg. 4].

After a two day trial conducted in September 2006, in which Marc was represented by counsel, the Probate Court entered a final judgment permanently removing Marc as a co-trustee. In detailed findings, which incorporated by reference the TRO, the Probate Court found that Marc had "breached his fiduciary duty by continually borrowing monies from the Trust, in part

---

[2] Mrs. Barrett was 90 years old at this time.
[3] Fla. Stat. §737.201(1)(a), which provides that courts have jurisdiction over the administration of trusts, including, the appointment and removal of trustees, was repealed in 2007 and replaced by Fla. Stat. §736.021.
[4] *Dean R. Barrett and Bradford H. Barrett v. Marc Barrett*, Case No. 09-505-CP (Martin County Circuit Court, Probate Div.).

to try [to] keep risky real estate investments afloat in the 1980's ....."[5] [*Id.*, Exhibit D: "Final Judgment," Case No. 05-909-CP (the "Probate Judgment"), ¶ 7]. The Probate Court also entered final judgment against Marc and in favor of the Trust in the amount of $294,310.32, plus interest. The Probate Court found that Dean and Bradford had proven that certain notes represented "loans which were to be repaid by Marc Barrett and which remain unpaid, the Court further finds that seven of those notes may be recouped for the Trust based on the weight of the evidence that these borrowings were of Trust assets."[6] [The Probate Judgment, ¶ 15]. The principal amount of these seven notes, dated between 1980 and 1984, totaled $74,000, which, with other charges and interest, represented a total obligation of $294,310.32 (the "Repayment Obligation"). [*Id.*]

In a subsequent ruling, the Probate Court also awarded Dean and Bradford attorney's fees and costs of $191,602.90 pursuant to Chapter 737 of the Florida Statutes. [*Id.*, Exhibit E: "Final Judgment of Attorneys' Fees and Costs," Case No. 05-909-CP (the "Fee Judgment"), ¶ 15]. In making its ruling, the court held that "[Dean and Bradford] were the prevailing party, and the Court finds good faith by the Plaintiffs, necessity for the fees and costs, and that the action did benefit the [Trust]." [*Id.*, at ¶ 2].

Marc appealed the Probate Judgment and the Fee Judgment to the Florida Fourth District Court of Appeal, which appeal was unsuccessful. The Probate Court entered an Agreed Final Judgment awarding Dean and Bradford appellate attorneys' fees and costs of $53,000. [*Id.*,

---

[5] The Probate Court also found Marc breached his fiduciary duty when he caused the Schwab account to be frozen, but while that finding is one of the bases for which Marc was permanently removed as co-trustee, it is not one of the grounds on which the Repayment Obligation (hereinafter defined) is based.
[6] The Court held the Plaintiffs did not meet their burden of proving all of the funds sought were for unpaid loans as opposed to bad investments, and so limited the money damages (other than attorney fees and costs) to the seven notes.

Exhibit F: "Agreed Final Judgment of Appellate Attorney's Fees and Costs," Case No. 05-909-CP (the "Appellate Fee Judgment")].[7]

Meanwhile, in July of 2006, Marc sought to amend his answer in the Probate Action to add the 1986 Discharge as an affirmative defense. When the Probate Court denied this motion as untimely, on July 24, 2006 Marc moved to reopen the Colorado Bankruptcy case to ask the Colorado bankruptcy court to enforce the 1986 Discharge as a bar to the Probate Action. Once the Colorado Bankruptcy case was reopened, Marc initiated a contested matter against co-trustees Bradford and Dean for contempt for violating the bankruptcy discharge injunction. On October 18, 2007, the Colorado bankruptcy court granted Bradford and Dean's motion for summary judgment on the grounds of collateral estoppel, finding the Probate Judgment prevented Marc from re-litigating the issues of "whether [Bradford and Dean's] efforts to reduce future distributions from the [Trust] to [Marc's] unpaid pre-bankruptcy obligations to the [Trust] are prohibited by, and would be in violation of, this Court's 1986 discharge order and injunction". [*Id.*, Exhibit G: "Opinion and Order on Respondent's Motion for Summary Judgment," Case No. 05-909-CP (the "Colorado Judgment"), pg. 5].

Still undeterred, on June 13, 2008, Marc filed for bankruptcy protection under chapter 7 of the Bankruptcy Code in the Southern District of Florida. On December 12, 2008, Bradford, Dean and the Trust (the "Trust Plaintiffs") filed the instant adversary proceeding, objecting to the dischargability of the State Court Judgments pursuant to 11 U.S.C. §523(a)(2)(A) and (a)(4).[8] In his Answer (DE #10), Marc denied all relevant factual assertions and asserted affirmative defenses that the Trust Plaintiffs have mischaracterized the nature of the judgments, res judicata, collateral estoppel, estoppel by judgment, and the doctrine of unclean hands. The Trust Plaintiffs

---

[7] The Probate Judgment, the Fee Judgment and the Appellate Fee Judgment will be referred to herein collectively as the "State Court Judgments."

[8] Marc has received a discharge of all scheduled debts except those held by the Trust, Bradford and Dean.

subsequently filed their Motion for Summary Judgment (DE #12) arguing that their recoupment

claim is unaffected by Marc's discharge in this bankruptcy case, and that collateral estoppel and

res judicata bar Marc from contesting the State Court Judgments. Marc then filed his Response

and Cross-Motion for Summary Judgment (DE #28) arguing that the State Court Judgments do

not implicate section 523, that the Probate Judgment is clearly based on breach of contract, and

thus the claims are dischargeable. Marc also argues res judicata and collateral estoppel apply in

his favor, entitling him to summary judgment.

## DISCUSSION

Federal Rule of Civil Procedure 56 governing summary judgment applies in adversary

bankruptcy proceedings. Fed. R. Bankr. P. 7056. Summary judgment is appropriate when the

"pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). However, "a mere

'scintilla' of evidence supporting the opposing party's position will not suffice; there must be

enough of a showing that the jury could reasonably find for that party." *Loren v. Sasser*, 309

F.3d 1296, 1302 (11th Cir. 2002) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.

1990)).

In considering whether a genuine issue of material fact remains for trial, the court must

"view all evidence and make all reasonable inferences in favor of the party opposing summary

judgment." *Id.*, at 1301-02. *See also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The

Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must 'cull the
> universe of possible inferences from the facts established by weighing each
> against the abstract standard of reasonableness.' The opposing party's
> inferences need not be more probable than those inferences in favor of the

6

> movant to create a factual dispute, so long as they reasonably may be drawn
> from the facts. When more than one inference reasonably can be drawn, it is
> for the trier of fact to determine the proper one.

*WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir. 1988) (internal citations omitted). The moving

party discharges its burden on a motion for summary judgment by "showing" or "pointing out"

to the Court that there is an absence of evidence to support the non-moving party's case. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## Res Judicata and Collateral Estoppel

In the instant case, both parties argue that summary judgment is appropriate as res

judicata and collateral estoppel bar the re-litigation of the matters decided by the Probate Court.

A federal court being asked to give res judicata effect to a state court judgment "'must apply the

res judicata principles of the law of the state whose decision is set up as a bar to further

litigation.'" *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1307 (11th Cir. 2006) (quoting

*Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1509 (11th Cir. 1985)). In Florida, a

judgment on the merits will bar "a subsequent action between the same parties on the same cause

of action." *Fla. DOT v. Juliano*, 801 So. 2d 101, 105 (Fla. 2001) (quoting *Youngblood v. Taylor*,

89 So. 2d 503, 505 (Fla. 1956)). "[T]he doctrine of res judicata not only bars issues that were

raised, but it also precludes consideration of issues that could have been raised but were not

raised in the first case." *Id.*

Despite both parties' arguments that res judicata entitles one of them to relief, the issue of

non-dischargeability cannot be precluded by the Probate Judgment because a cause of action for

non-dischargeability does not exist outside of the Bankruptcy Code. As the Supreme Court has

held, state court judgments do not have any res judicata effect in dischargeability proceedings.

*Brown v. Felsen*, 442 U.S. 127 (1979).

7

Conversely, collateral estoppel clearly applies in discharge proceedings. *Grogan v.*

*Garner*, 498 U.S. 279, 294 n. 11 (1991). When determining whether collateral estoppel applies to

a state court judgment, as with res judicata, state law applies. *St. Laurent v. Ambrose (In re St.*

*Laurent)*, 991 F.2d 672, 675-76 (11th Cir. 1993). However, "[w]hile collateral estoppel may bar

a bankruptcy court from relitigating factual issues previously decided in state court, the ultimate

issue of dischargeability is a legal question to be addressed by the bankruptcy court in the

exercise of its jurisdiction." *Hartnett v. Mustelier (In re Hartnett)*, 330 B.R. 823, 829 (Bankr.

S.D. Fla. 2005).

"In Florida, the doctrine of collateral estoppel bars relitigation of the same issues between

the same parties in connection with a different cause of action." *Topps v. State*, 865 So. 2d 1253,

1255 (Fla. 2004).

> Collateral estoppel is a judicial doctrine which in general terms prevents
> identical parties from relitigating the same issues that have already been
> decided. The essential elements of the doctrine are that the parties and issues
> be identical, and that the particular matter be fully litigated and determined in
> a contest which results in a final decision of a court of competent jurisdiction.

*Dep't of Health & Rehabilitative Serv. v. B.J.M.*, 656 So. 2d 906, 910 (Fla. 1995) (citations

omitted). *See also Dadeland Depot, Inc., v. St. Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216

(Fla. 2006).

In the context of an action brought pursuant 11 U.S.C. §523(a), "[a] bankruptcy court

could properly give collateral estoppel effect to those elements of the claim that are identical to

the elements required for discharge and which were actually litigated in the prior action."

*Grogan v. Garner*, 498 U.S. at 284.

The Trust Plaintiffs seek a determination that the Probate Judgment is non-dischargeable

pursuant to 11 U.S.C. §523(a)(4), and because the Probate Judgment gives rise to a claim for

recoupment. Section 523(a)(4) provides that a debtor cannot discharge a debt, "for fraud or defalcation while acting in a fiduciary capacity." Thus, in order to determine whether the parties are collaterally estopped from relitigating the issues posed herein, I must determine whether each of the elements of collateral estoppel have been met with respect to whether the Debtor: (a) committed fraud or defalcation while acting in a fiduciary capacity, which acts gave rise to a debt; or (b) whether the State Court Judgments gave rise to a right of recoupment and are therefore non-dischargeable.

While the Trust Plaintiffs and the Debtor agree that collateral estoppel applies, they disagree regarding what the Probate Court actually ruled and, therefore, the impact of the Probate Judgment on this adversary proceeding. The Trust Plaintiffs argue that the issues of defalcation, discharge and recoupment were actually litigated and decided by the Probate Court. The Debtor insists that, at least with respect to the Repayment Obligation, the Probate Court held there was merely a breach of contract, and that the Plaintiffs are therefore estopped from arguing anything to the contrary.

There is no question that issues of breach of fiduciary duty, defalcation and recoupment were actually litigated in the Probate Action,[9] or that each of the Trust Plaintiffs and the Debtor was either a party, or in the case of the Trust "adequately represented by a party,"[10] in the Probate Action. Therefore, the remaining points I must resolve are whether these issues were fully litigated and finally decided in the Probate Action. The answer lies in the Probate Judgment which clearly shows that these issues were fully and finally litigated, and decided adverse to the Debtor.

---

[9] *See* The Trust Parties' Motion for Summary Judgment (DE #12), Exhibit C: "Joint Pre-Trial Stipulation," Case No. 05-909-CP.

[10] When determining whether the parties are identical some courts have held that this element of collateral estoppel is satisfied when a party "was adequately represented" in the prior proceeding. *See U.S. v. Weiss*, 467 F.3d 1300, 1308 (11th Cir. 2006).

A finding of defalcation requires essentially two elements: a fiduciary relationship and

the occurrence of defalcation. *Hearn v. Goodwin (In re Goodwin)*, 355 B.R. 337, 343 (Bankr.

M.D. Fla. 2006). A plaintiff asserting non-dischargeability under section 523(a)(4) must prove

that the debtor was acting in an express or statutory trust capacity at the time the alleged fraud or

defalcation occurred. *Shapiro v. Clark (In re Clark)*, 400 B.R. 321, 330 (Bankr. M.D. Fla. 2009).

In the Probate Action it was undisputed that the Debtor was co-trustee of the Trust. [The Trust

Parties' Motion for Summary Judgment (DE #12), Exhibit C: "Joint Pre-Trial Stipulation," Case

No. 05-909-CP, ¶ B8]. Indeed, the Debtor's fiduciary obligations to the Trust as co-trustee, and

his breach of those fiduciary obligations, form the entire basis for the TRO and the Probate

Judgment.

The Probate Court also clearly and necessarily decided as a basis for the Probate

Judgment that the Debtor committed, indeed, admitted to committing, defalcation while acting as

co-trustee. The Probate Court did not need to find misconduct, as argued by the Debtor.

> 'Defalcation' has been defined as a failure to account for or to produce funds
> entrusted to a fiduciary. Defalcation does not require the element of intent and
> does not require substantial culpability or misconduct. Negligence or
> ignorance may be defalcation. Creating a debt by breaching a fiduciary duty is
> sufficient to constitute defalcation, even in the absence of bad faith.

*In re Goodwin*, 355 B.R. at 345 (internal citations omitted). The Probate Court made specific

findings that the Debtor breached his fiduciary duty by taking the loans at the time he was

serving as co-trustee of the Trust:

> What precipitated Marc Barrett's interest in the Trust was … his own personal
> financial problems, which he was looking to cure through the use of Trust
> assets, which constitutes a breach of his fiduciary duty as co-trustee.
>      … Marc Barrett breached his fiduciary duty by continually borrowing
> monies from the Trust[.]

[The Probate Judgment, ¶ 6-7]. Moreover, the Probate Court also found that the Debtor *admitted* to defalcation:

> The Court finds the testimony of Bradford Barrett to be credible, that Marc Barrett apologized for his financial defalcations that occurred during the 1980's, ... and agreed that his residuary share of the Trust would be decreased accordingly and that he would be out of the Trust and its administration.

[*Id.*, ¶ 11].[11]

Despite the clear language used by the Probate Court, the Debtor argues that the use of the word "defalcation" in the opinion was a term of art, and not a finding. However, the Probate Court clearly made findings sufficient to support both elements of defalcation. Even if the Probate Court had used "defalcation" only as a term of art, and had not made such conclusive findings, I would nonetheless hold that the Probate Judgment delineates facts sufficient to resolve the issue of non-dischargeability under section 523(a)(4). The findings in the Probate Judgment are clear: a fiduciary relationship existed between the Debtor and the Trust, the Debtor's actions in taking the loans were in breach of his fiduciary duty, and the unrepaid loans represented by the seven notes underlying the Repayment Obligation – the debt – constituted defalcation while acting in a fiduciary capacity.

The Debtor argues that the Probate Court ruled against Bradford and Dean for claims of "alleged financial improprieties," arguing that "[t]he only damage claims which were sustained were claims of un-repaid loan obligations." [Defendant's Response to Plaintiffs' Reply (DE #32), pg. 2]. The Debtor also argues that "the state court action found that the obligation as to which judgments were entered were contractual in nature" and that "there is nothing in the Final

---

[11] The Probate Court, in fact, reiterated this finding again later in the opinion:
> The Court finds as credible and believable the testimony of Bradford Barrett and Marc Barrett apologized for his defalcations, admitting to owing the monies and to have his residuary share of the Trust diminished by the amount he had borrowed ...
[The probate Judgment, ¶ 13].

Judgment ... which suggests that the Final Judgment itself was entered as a result of any claim

that Marc Barrett was guilty of obtaining money by ... defalcation while acting in a fiduciary

capacity ..." [The Debtor's Response and Cross-Motion for Summary Judgment (DE #28), pg.

5]. The Debtor's arguments are completely, and unequivocally, contradicted by the express

findings of the Probate Court. Despite the Debtor's arguments to the contrary, the Probate Court

was not required to find Marc committed fraud or engaged in actual misconduct in order to find

Marc committed defalcation. The defalcation is the non-repayment of the loans. The Debtor's

arguments are specious. The Debtor is collaterally estopped from arguing that he did not commit

defalcation while acting in a fiduciary capacity or that such defalcation did not give rise to a

debt, and therefore the Repayment Obligations are non-dischargeable pursuant to 11 U.S.C.

§524(a)(4).

**Recoupment**

I now turn to the issue of recoupment. The Probate Court specifically found the Trust had

a right to recoupment:

> [T]he Court further finds that seven of those notes[12] may be recouped for the
> Trust based on the weight of the evidence that these borrowings were of Trust
> assets.

[The Probate Judgment, ¶ 15].

> [T]he court orders and declares a recoupment by the Trust against any future
> Trust distributions to Marc Barrett in the amount of [$294,310.32 plus
> interest].

[*Id.*, pg. 11 ¶ 2]. Despite the Probate Court's holding, the Debtor argues that the Trust Plaintiffs

have no right of recoupment because the obligations of the Debtor to the Trust arose out of a

series of pre-petition loans. The Debtor argues that he had no claim against the Trust at the time

the loans were made, nor at the time the summary judgment motions were argued. Moreover, the

---

[12] The 'seven notes' are those unpaid notes on which the Repayment Obligation is founded.

Debtor argues, his obligations to the Trust are debtor/creditor obligations and not obligations arising from his "status as a contingent beneficiary under the Trust itself." [Defendant's Response to Plaintiff's Reply (DE #32), pg. 11].

The common law doctrine of recoupment, while often merged with its sister right of setoff in other contexts, is a separate and distinct doctrine in bankruptcy.[13] Recoupment "allows a defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff which arose out of the same transaction to arrive at a just and proper liability on the plaintiff's claim." *Akincibasi v. Moscarlito (In re Akincibasi)*, 372 B.R. 80, 84 (Bankr. M.D. Fla. 2007) (quoting *In re Holford*, 896 F.2d 176, 178 (5th Cir. 1990)). Unlike setoff, which allows a creditor to offset a pre-petition debt with a mutual pre-petition debt, recoupment transcends the filing of a petition and allows a creditor to offset a pre-petition debt with a mutual post-petition debt. *See, e.g., Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1537 (10th Cir. 1990). Further, recoupment is not affected by the automatic stay, nor is exercising the equitable right a violation of the discharge injunction. *In re Akincibasi*, 372 B.R. 80, 84; *In re Jones*, 289 B.R. 188, 191-92 (Bankr. M.D. Fla. 2002).

The Probate Court specifically held that the Debtor's obligations to the Trust are to be paid from distributions which he would otherwise be entitled to receive from the Trust. Indeed, the Probate Court specifically held that, while the Court had

> denied Marc Barrett's motion for leave to amend to assert the untimely defense of discharge in bankruptcy, the Court concludes that the bankruptcy discharge does not bar the relief sought and granted herein for recoupment (or removal of Marc Barrett as co-trustee). *In re Davidovich*, 901 F. 2d 1533, 1537 (10th Cir. BAP 1990)(allowing an offset under doctrine of recoupment because it would be inequitable for party to enjoy benefits of transaction

---

[13] Unfortunately, the Probate Court used the terms "setoff" and "recoupment" somewhat interchangeably. While it is possible that the differences between recoupment and setoff have minimal import under state law, these differences are meaningful under bankruptcy law. However, as will be discussed in more detail, it is clear the Repayment Obligation, the Fee Judgment and the Appellate Fee Judgment are recoupable, whatever nomenclature was used.

without meeting its obligations); *In re Izaguirre*, 166 B.R. 484, 493 (Bankr. D.
Ga. 1994)(recoupment does not contravene the fresh start policy implicit in
the discharge provisions of the Bankruptcy Code or impair the debtor's
exemptions).

[The Probate Judgment, fn. 8].

Not only did the Probate Court specifically hold that the obligations represented by the

seven notes are subject to recoupment and not dischargeable in bankruptcy, the Colorado

bankruptcy court specifically held that, because this issue was addressed and resolved by the

Probate Judgment, the Debtor could not seek a ruling from the Colorado bankruptcy court to the

contrary.[14]

> The Debtor argues that the judgment in the Florida State Court Suit cannot be
> given preclusive effect because it is "void" under the discharge provisions of
> the Bankruptcy Code. That provision of the bankruptcy law voids any
> judgment that is a determination of personal liability "with respect to any debt
> discharged" in bankruptcy. To argue that this voids the Florida state court
> judgment begs the very question of preclusion of collateral attack on the
> Florida judgment by the doctrine of collateral estoppel. The Florida state trial
> court finally determined, rightly or wrongly, that the Debtor's obligation in
> question was not a "debt discharged" for purposes of providing a defense to
> the Trust Parties' claims in the Florida State Court Suit. Accordingly, the
> Florida Judgment implicitly determined that section 524(a)(1) of the
> Bankruptcy Code is not applicable as that section applies only to, "any debt
> discharged ...." And, under the full faith and credit mandate of 28 U.S.C. §
> 1738, it is that very determination of inapplicability of section 524(a)(1) of the
> Bankruptcy Code that precludes this federal bankruptcy court's collateral
> attack on the Florida state trial court's final judgment. If the Debtor seeks
> review of the Florida trial court's determination that his bankruptcy discharge
> provides no defense to the Trust Parties' claims, that review must be in the
> Florida state appellate courts.

[The Colorado Judgment, pg. 6-7 (footnotes omitted)].

Thus, the Debtor is collaterally estopped from arguing that the Probate Judgment is

dischargeable because it does not give rise to a right of recoupment.

---

[14] The Debtor was seeking a determination by the Colorado bankruptcy court that the Probate Action was a violation
of the discharge injunction of 11 U.S.C. §524(a)(1).

**Attorney's Fees**

The Trust Plaintiffs also argue that the obligations represented by the Fee Judgment and

the Appellate Fee Judgment are nondischargeable. Attorney's fees and costs constitute a debt

under 11 U.S.C. §523 when they "result from" the debtor's conduct underlying the debt. *Cohen*

*v. De La Cruz*, 523 U.S. 213 (1998). Therefore, when a debt is nondischargeable pursuant to 11

U.S.C. §523(a), the attorney's fees and costs associated with that debt are likewise

nondischargeable. *See, e.g., K & K Ins. Group, Inc. v. Houston (In re Houston)*, 305 B.R. 111,

116 (Bankr. M.D. Fla. 2003) (holding that when a state court judgment was found not to be

dischargeable under 11 U.S.C. §523(a)(6), the associated attorney's fees were also not

dischargeable); *USAA Cas. Ins. Co. v. Auffant (In re Auffant)*, 268 B.R. 689, 695-96 (Bankr.

M.D. Fla. 2001) (same). *See also In re St. Laurent*, 991 F.2d at 679 ("[I]f a creditor is able to

establish the requisite elements of Section 523, the creditor is entitled to collect the 'whole of

any debt' he is owed by the debtor." (internal citations omitted)). Because I have already found

the underlying Probate Judgment nondischargeable, the attorney's fees and costs awarded by the

Probate Court are also nondischargeable.

Moreover, the fees and costs are not dischargeable because they may be recouped from

the Debtor's distribution from the Trust. The Probate Court based the Fee Judgment on Chapter

737 of the Florida Statutes. Fla. Stat. §737.627, provides: "(1) In all actions for breach of

fiduciary duty or challenging the exercise of, or failure to exercise, a trustee's powers, the court

shall award taxable costs as in chancery actions, including attorney's fees." Therefore, upon a

finding of breach of fiduciary duty, a court is *required* to award attorney's fees. Section 737.627

also provides "(2) when awarding taxable costs, including attorney fees, under this section, the

court, in its discretion, may direct payment from a party's interest, if any, in the trust or enter a

15

judgment which may be satisfied from other property or the party or both." Thus the statute

specifically authorizes recoupment from trust assets of an attorney fee obligation arising from a

trust dispute. While the Appellate Fee Judgment does not reference Chapter 737, the Appellate

Fee Judgment is clearly based on Fla. Stat. §737.62 as the judgment specifically provides

> [T]o the extent that this final judgment is not satisfied at the time Marc is
> entitled to any distribution(s) from the Harry Bradford Barrett Residuary
> Trust, then said amount to satisfy this final judgment may be set off against
> any such distribution(s) to Marc Barrett.

[The Appellate Fee Judgment, pg. 1-2]. It having been held by the Probate Court that the Trust's

obligations to the Debtor are subject to the fee obligations of the Debtor to the Trust, then it

appears the Fee Judgment and Appellate Fee Judgment give rise to a right of recoupment.

Recoupment is a defense by a creditor against a debtor's claim. In order to prove

recoupment, the creditor must prove that: (1) the mutual debts arose from the same transaction;

(2) the creditor is asserting recoupment as a defense; and (3) the "main action" is timely. *In re

Smith*, 737 F.2d 1549, 1553 (11th Cir. 1984). Recoupment has generally been held to have

limited application because it is an exception to the automatic stay:

> [I]t should be limited in bankruptcy cases to situations in which both debts
> arise out of a single integrated transaction so that it would be inequitable for
> the debtor to enjoy the benefits of that transaction without also meeting its
> obligations. "In light of recoupment's equitable foundation, the doctrine is
> only applicable to claims that are so closely intertwined that allowing the
> debtor to escape its obligation would be inequitable notwithstanding the
> Bankruptcy Code's tenet that all unsecured creditors share equally in the
> debtor's estate."

*Affiliated of Fla., Inc. v. Mount Olive Pickle Co. (In re Affiliated of Fla., Inc.)*, 258 B.R. 495, 499

(Bankr. M.D. Fla. 2000) (internal citations omitted). As noted in the *Affiliated of Florida* case,

the right to rely on recoupment as a defense to a bankruptcy discharge is one that must be

informed by equitable considerations. *But see Holyoke Nursing Home, Inc. v. Health Care Fin.

Admin.*, 372 F.3d 1 (1st Cir. 2004) (when a court finds recoupment applicable there is no need for

16

further equitable balancing; equity is what dictates that obligations arising from the same transaction give rise to recoupable claims.)

The provisions of Fla. Stat. §737.627 evidence the intent of the Florida legislature to treat at least certain obligations of a beneficiary of a trust to arise from the same transaction as obligations of a trust to a beneficiary. Allowing the Debtor to discharge the Fee Judgment and the Appellate Fee Judgment, while allowing the Debtor to retain his right to a full distribution from the Trust, would be inconsistent with Florida law which recognizes that mutuality of obligation. This is analogous to those cases that have held, almost uniformly, that obligations by a Medicare provider and payments owed to a Medicare provider, although arising in different years, nonetheless arise from the same transaction because Congress has so decided by statute. *See In re Holyoke Nursing Home, Inc.*, 372 F.3d at 4 (By enacting the Medicare Reimbursement Program, including those provisions that authorize recovery from income in future years Medicare overpayments made in prior years, "Congress rather clearly indicated that it wanted a provider's stream of services to be considered one transaction for purposes of any claim the government would have against the provider." (quoting *United States v. Consumer Health Services of America, Inc.*, 108 F.3d 390 (D.C. Cir. 1997)). Moreover, the application of recoupment does not strike an inequitable result for the Debtor or his creditors. The Debtor has received a discharge of all dischargeable debts and his right to such discharge is unaffected by the Trust Plaintiffs' recoupment rights. The Debtor's right to a distribution from the Trust is not property of the estate. His right to a distribution only arises when Mrs. Barrett dies – Mrs. Barrett was still alive more than six months after the petition date.[15] Therefore, the Trust's recoupment

---

[15] 11 U.S.C. §541(a)(5) includes as property of the estate "any interest in property … that the debtor acquires or becomes entitled to acquire within 180 days after [the Petition Date] – (a) by bequest, devise or inheritance."

rights will have no bearing on any distribution that creditors of this bankruptcy case would otherwise be entitled to receive.

The obligations of the Debtor to pay the Fee Judgment and Appellate Fee Judgment may be deducted from distributions which the Debtor may be otherwise entitled to receive from the Trust; the fee obligations give rise to a claim for recoupment and are not dischargeable.

The question remains whether the entire amount of attorney's fees are nondischargeable or only that portion attributable to the litigation, and findings, of defalcation. The Trust Plaintiffs argue that all of the fees are non-dischargeable, and, unsurprisingly, the Debtor argues they are not. The Debtor argues that I must determine which portion of the fees are allocable to the findings of defalcation, and if I cannot make such an allocation, then the entire amount of fees are dischargeable. Even if *Cohen v. de la Cruz* required me to make such a calculation, the fact that the fees are also nondischargeable based on recoupment makes it unnecessary for me to address this issue. Thus, whether pursuant to *Cohen v. de la Cruz*, or by virtue of the rights recognized by Florida statute, the Fee Judgment and the Appellate Fee Judgment are non-dischargeable.

## CONCLUSION

The parties have spent many years in litigation. The Debtor has tried and failed to convince three trial courts, and at least one appellate court, that his obligations to the Trust Plaintiffs are dischargeable. They are not, and, because these obligations also give rise to claims of recoupment, they will never be. None of the Probate Judgment, the Fee Judgment, or the Appellate Fee Judgment are dischargeable by virtue of 11 U.S.C. §524(a)(4). Moreover, the State Court Judgments are recoupable from any Trust distributions to which the Debtor might someday be entitled. Accordingly, for the reasons stated herein, it is

ORDERED:

1.  The Trust Plaintiffs' Motion for Summary Judgment (DE #12) is GRANTED.

2.  The Debtor's Cross-Motion for Summary Judgment (DE #27) is DENIED.

3.  The Trust Plaintiffs are directed to submit a final judgment consistent with this Order.

# # #

Copies provided to:
Luis Salazar, Esq.
Theodore Dempster, Esq.

*Attorney Salazar is directed to serve a conformed copy of this Order on all parties in interest and to file a certificate of service of same with the Clerk of Court.*